No. 23-11984-J

---

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

**ORGANIZATION OF PROFESSIONAL AVICULTURISTS INC.,** *et al.,*
*Plaintiffs/Appellants,*

v.

**U.S. FISH AND WILDLIFE SERVICE,**
*Defendant/Appellee.*

_____

**On Appeal from United States District Court
For the Southern District of Florida**
No. 1:22-cv-23536-KMW

_____

### PRINCIPAL BRIEF FOR APPELLANT

_____

David Anthony Garcia
Fla. Bar No.: 1015673
David Anthony Garcia PA
739 Washington Ave, Suite 909
Homestead, FL 33030
Tel.: (305) 319-1309
david@davidgarcialaw.com

August 18, 2023                    *Counsels for Appellant*

*Org. of Pro. Aviculturists v. U.S. Fish & Wildlife Serv.,*
No. 23-11984-J (CA11), 1:22-cv-23536-KMW (S.D. Fla.)

# APPELLANT'S
## CERTIFICATE OF INTERESTED PERSONS

I hereby certify as required by Eleventh Circuit Rules 26.1-1 through 26.1-5 that, to the best of my knowledge, the following is a complete list of persons and entities that have an interest in the outcome of this case.

1. CEVALLOS, Astrid Stuth, Trial Attorney, Wildlife and Marine Resources Section, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C.;

2. FLAX, Meredith L., Deputy Section Chief, Wildlife and Marine Resources Section, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C.;

3. GARCIA, David A., David Anthony Garcia PA, Counsel for Appellants, Miami, FL;

4. GNAM, Rosemarie, Chief, Division of Scientific Authority, U.S. Fish and Wildlife Service, Washington, D.C.;

5. GOVINDAN, S. Jay, Section Chief, Wildlife and Marine Resources Section, Environment and Natural Resources

*Org. of Pro. Aviculturists v. U.S. Fish & Wildlife Serv.,*
No. 23-11984-J (CA11), 1:22-cv-23536-KMW (S.D. Fla.)

Division, U.S. Department of Justice, Washington, D.C.;

6.  HUSEN, Russell, Attorney-Advisor, Office of the Solicitor,

    U.S., Department of the Interior, Washington, D.C.;

7.  KIM, Todd, Assistant Attorney General, Environment and Natu-

    ral Resources Division, U.S. Department of Justice Washington,

    D.C.;

8.  LINEOLATED PARAKEET SOCIETY, Humble, Texas;

9.  LUNDMAN, Robert J., Assistant Section Chief, Appellate Sec-

    tion, Environment and Natural Resources Division, U.S. Depart-

    ment of Justice, Washington, D.C.;

10. ORGANIZATION OF PROFESSIONAL AVICULTURISTS, INC.,

    Tampa, Florida;

11. STOCKMAN, Robert P., Attorney, Appellate Section, Environ-

    ment and Natural Resources Division, U.S. Department of Jus-

    tice, Washington, D.C.;

12. United States Department of Justice, Washington, D.C.;

13. United States Department of the Interior, Washington, D.C.;

14. United States Fish and Wildlife Service, Washington, D.C.;

15. WILLIAMS, Hon. Kathleen M., Judge, U.S. District Court,

*Org. of Pro. Aviculturists v. U.S. Fish & Wildlife Serv.,*
No. 23-11984-J (CA11), 1:22-cv-23536-KMW (S.D. Fla.)

Southern District of Florida, Miami, Florida;

16.    WILLIAMS, Martha, Director, U.S. Fish and Wildlife Service,

Washington, D.C.;

No publicly traded company or corporation has an interest in the

outcome of this case or appeal.

/s/ David A. Garcia
David A. Garcia

August 18, 2023                                 *Counsel for Appellant*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Plaintiffs-Appellants, Organization of Professional Avicultur-ists and Lineolated Parakeet Society, believe that this matter can be de-cided without oral argument, but counsel for appellants is available for oral argument if the Court believes that it will beneficial to the adjudi-cation.

## **TABLE OF CONTENTS**

Certificate of Interested Persons ........................................................... C-1

Statement Regarding Oral Argument ......................................................... i

Table of Citations ............................................................................. iii

Statement of Jurisdiction ...................................................................... 2

Statement of the Issues ........................................................................ 4

Statement of the Case

    I.     Course of Proceedings and Dispositions Below ........................ 4

    II.    Statement of the Facts ............................................................. 8

    III.   Scope and Standard of Review ............................................... 20

Summary of the Argument ................................................................... 21

Argument and Citations of Authority

    I.     The plain language of 16 U.S.C. § 4905(a)(2)(A) re-
          quires that FWS list avian species permitted for im-
          port by country of origin ........................................................ 22

    II.    The implementation of the CITES and the regulatory defini-
          tions of country of origin supports the OPA and LPS's position
          ..................................................................................... 25

    III.   The statutory tools of construction further support the OPA
          and LPS ............................................................................... 29

Conclusion ....................................................................................... 33

Certificate of Compliance

Certificate of Service

# TABLE OF CITATIONS

## Judicial Cases

*Ardestani v. INS*,
     502 U.S. 129 (1991) ............................................................24

*Chevron, U.S.A., Inc. v. NRDC,*
     467 U.S. 837 (1984) ........................................................18

*Consol. Bank, N.A., Hialeah, Fla. v. U.S. Dep't of Treasury, Office of Comptroller of Currency*,
     118 F.3d 1461, 1463 (11th Cir. 1997) ..................................22

*Hylton v. U.S. Att'y Gen.*,
992 F.3d 1154 (11th Cir. 2021) ............................................30

*Nielsen v. Preap*,
     139 S. Ct. 954 (2019)....................................................22

*United States v. Cullen*,
     499 F.3d 157(2d Cir. 2007)..............................................2

*Silva-Hernandez v. USCIS*,
     701 F.3d 356 (CA11 2012)...............................................18

*Romero v. Sec'y, U.S. Dep't of Homeland Sec.,*
     20 F.4th 1374, 1381 (11th Cir. 2021) ...............................22

## Statutory Provisions

5 U.S.C.:

     §553(e) ........................................................................4, 5

     §706(2)(A) ......................................................................6

16 U.S.C.:

     §4901(1) ........................................................................17

§4901(2) ...................................................................................... 17

§4901(11) ........................................................................ 17, 25, 32

§4901(12) ........................................................................ 17, 25, 32

§4902(4) ...................................................................................... 17

§4903(1) ...................................................................................... 17

§4904(c) ...................................................................................... 17

§4905 ................................................................................... *passim*

§4905(a)(1) ............................................................................ 18, 22

§4905(a)(2) ........................................................................... *passim*

§4905(a)(2)(A) ...................................................................... *passim*

§4905(a)(2)(B) ........................................................... 19, 20, 30

§4905(b) ................................................................................ 19, 25

§4905(c) ................................................................................ 19, 25

§4909 ................................................................................... *passim*

§4909(b) ...................................................................................... 19

28 U.S.C.:

§1291 ............................................................................................ 3

§1294(1) ...................................................................................... 4

§1331 ............................................................................................ 3

§1346(a)(2) .................................................................................. 3

§1391(e)(1)(C) ............................................................................ 3

## Rules

Fed. R. App. P. 4(a)(1)(B) ...........................................................................3

## Regulatory Provisions

50 C.F.R.:

§10.12.....................................................................................21, 27

Part 23 .................................................................................14, 26

§15.31.............................................................................................6

§15.33................................................................................... *passim*

§15.33(a) .....................................................................................10

§22.6...........................................................................................28

§23.1(a). .....................................................................................26

§23.5.................................................................. 1, 21, 26, 31, 32

§17.42(e)......................................................................................28

§17.95(i)(2)(iv) ...........................................................................28

## Other Authorities

*Barred parakeet Bolborhynchus lineola*, IUCN, https://www.iu-cnredlist.org/species/22685913/140714291 (last visited Aug. 18, 2023) 10

*Cactus Parakeet Eupsitula cactorum*, IUCN, https://www.iu-cnredlist.org/ja/species/22685748/93085356 (last visited Aug. 18, 2023) 9

*Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"),*
    Mar. 3, 1973, 27 U.S.T. 1087, T.I.A.S. No. 8249 ........................8, 11

CITES Art. II(1) .........................................................................11

CITES Art. II(2)(a) ...............................................................11

CITES Art. II(3) ...................................................................11

CITES Art. III(2) ..................................................................12

CITES Art. III(3) ..................................................................12

CITES Art. IV .......................................................................13

CITES Art. V .........................................................................13

CITES Art. VI.........................................................................13

CITES Art. VI(2) ...................................................................14

CITES Art. VII .......................................................................14

CITES Art. VII(4) ..................................................................12

CITES Art. XIV .....................................................................14

*CITES Trade Database*, CITES, https://trade.cites.org/ (last visited Aug. 17, 2023) ...............................................................................18

*Importation of Exotic Wild Birds to the United States; Amendment of Final Rule Implementing   the Wild Bird Conservation Act of 1992,*
59 Fed. Reg. 62,254, 62,262 (Dec. 2, 1994) ....................................16

No. 23-11984-J

---

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

**ORGANIZATION OF PROFESSIONAL AVICULTURISTS INC.,** *et al.,*
*Plaintiffs/Appellants,*

V.

**U.S. FISH AND WILDLIFE SERVICE,**
*Defendant/Appellee.*

—————————————————————

**PRINCIPAL BRIEF FOR APPELLANT**

—————————————————————

The appellants, the Organization of Professional Aviculturists ("OPA") and the Lineolated Parakeet Society ("LPS") come before this Court because they believe that the plain language of 16 U.S.C. § 4905(a)(2) has a clear and unambiguous meaning; that avian species permitted for import under the WBCA must be listed on 50 C.F.R § 15.33 by the countries of origin, as defined by 50 C.F.R. § 23.5, from which they are permitted to be imported.

The statute at issue in this litigation is the Wild Exotic Bird Conservation Act ("WBCA"), codified at 16 U.S.C. § 4901-4916. This statute

has been so rarely litigated in the 31 years since it became law, that it tempted one of the few courts to issue an opinion on it to pun on its name, calling it a "*rara avis.*" *United States v. Cullen*, 499 F.3d 157, 159 (2d Cir. 2007). The particular question presented to this Court, the meaning of 16 U.S.C. § 4905(a)(2), like most of the rest of the meaning of the statute, is a question of first impression, in this, and all other circuits.

The OPA and LPS would also take this opportunity at the outset to define who they are. The appellants in this case are organizations that represent aviculturists. That is to say, passionate individuals who adore birds and the caring, raising, and breeding thereof. Both organizations believe that a sustainable and well-regulated trade is essential to the conservation of avian species in this Anthropocene epoch.

The OPA and LPS hope that the FWS will be more willing to work with aviculture going forward. We also hope that the FWS will correctly label us as aviculturists in this litigation and not with a derisive antonym as they have taken to doing in past litigations.

## STATEMENT OF JURISDICTION

The OPA and LPS seek review of the district court's order

granting the FWS's motion to dismiss their complaint. (DE 19.) The district court had jurisdiction over the appellants' claims under 28 U.S.C. §1331 (federal question) and 28 U.S.C. § 1346(a)(2) (United States as defendant). The appellants, OPA and LPS filed two petitions with FWS, as was their statutory right under 16 U.S.C. § 4909. These petitions were denied as invalid by FWS, and as there was no further exhaustion requirement set forth by statute or regulation, the OPA and LPS sought review of these denials before the district court for the Southern District of Florida.

Venue was proper in the Southern District of Florida under §1391(e)(1)(C) because the plaintiff, Organization of Professional Aviculturists is a national, non-profit 501(c)(6) organization that is incorporated in the State of Florida and was a petitioner on both petitions at issue in this case.

This Court has jurisdiction over this case under 28 U.S.C. §1291 as it is an appeal from a "final decision of [a] district court[]." Specifically, the district court granted the FWS's motion to dismiss and closed proceedings. (DE 19.)

Venue is proper before this Court because the district court sits

3

within this circuit.  28 U.S.C. § 1294(1).  Lastly, the OPA and LPS

timely appealed from the decision of the district court in accordance

with Fed. R. App. P. 4(a)(1)(B). On June 9, 2023, the district court dis-

missed the appellants' complaint. (DE 19.) And also on June 9, 2023,

the appellants filed their notice of appeal. (DE 20.)

## STATEMENT OF THE ISSUES

The issue before the Court is:

> 1) Does the plain language of 16 U.S.C. § 4905(a)(2)(A) require
> that the FWS accept and adjudicate petitions filed under 16
> U.S.C. § 4909 that request that avian species be added to the
> approved import list found at 50 C.F.R. § 15.33 from specific
> countries of origin?

## STATEMENT OF THE CASE

## I.    Course of Proceedings and Dispositions Below

On June 3, 2021, the appellant, OPA filed a petition for rulemak-

ing pursuant to 16 U.S.C. § 4909 and 5 U.S.C. § 553(e), with the FWS to

add Cactus conure (*Eupsittula cactorum*)[1] captive-bred in certain

---

[1] The species in question is sometimes listed in the genus *Aratinga* and
sometimes in the genus *Eupsittula*. The undersigned was recently in-
formed by University of Chicago Ph.D. candidate studying the genetics
of South American parrots that the Cactus conure is properly in the ge-
nus *Eupsittula* and not the genus *Aratinga*. Thus, the change in nomen-
clature. Fun fact, the genus name, *Eupsittula,* combines the Ancient

European countries to the list of approved species for import to the United States under 16 U.S.C. § 4905; 50 C.F.R § 15.33. On July 11, 2021, the appellants, OPA, and LPS, filed a joint petition for rulemaking pursuant to 16 U.S.C. § 4909 and 5 U.S.C. § 553(e). with the FWS for the purpose of adding the green form of the Lineolated parakeet (*Bolborhynchus lineola*) captive-bred in certain European countries to the list of approved species for import to the United States under 16 U.S.C. § 4905; 50 C.F.R § 15.33. (DE 11-1, 11-2).

On July 28, 2021, the FWS responded with two nearly identical letters denying the petitions as invalid because they did not interpret the WBCA, nor their implementing regulations as permitting listing in a country-by-country manner. (DE 1-3; 1-4). The letter invited the appellants to re-file their petitions requesting that both species be included on the approved list, globally. In response, the appellants did exactly that, refiling both petitions requesting that both species be listed globally on the approved list of captive-bred species permitted for import.

Greek *eu* meaning "good" with the Modern Latin *psittula* meaning "little parrot." Cactus conures are definitely good little parrots.

On November 10, 2021, the FWS issued 90-day rulings under 16 § 4909, on both these petitions denying them for failing to "present sufficient information indicating that" either of the species "might meet any of the criteria set forth at 50 C.F.R § 15.31." 86 Fed. Reg. at 62,506, 62,507.

In response to the denial of the first set of petitions, on October 31, 2022, the OPA and LPS filed their complaint in the district court for the Southern District of Florida. This complaint only challenged the FWS's finding that the first two petitions were invalid under the statute and sought judicial review under the APA as agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" under 5 U.S.C. § 706(2)(A). In so doing, OPA and LPS sought to have the district court declare that the finding by the FWS that their first two petitions were invalid because they requested a country specific listings on the approved import list was unlawful because it contradicted the plain statutory language of the 16 U.S.C. § 4905(a)(2)(A). (DE 1.)

On January 17, 2023, FWS filed a motion to dismiss for lack of jurisdiction in response to OPA's and LPS's complaint. (DE 11.) On

6

February 10, 2023, the OPA and LPS filed their response in opposition to the FWS's motion to dismiss. (DE 17.) On February 24, 2023, the FWS filed its reply to the response. (DE 18.)

On June 9, 2023, the district court dismissed the OPA's and LPS's complaint. (DE 19.) In doing so the district court found that OPA and LPS had established subject matter jurisdiction because they did have standing to bring the claims. Specifically, the district court found that OPA and LPS sought an order from the district court requiring FWS to rule on the initial petitions which had been deemed invalid and that this was a redressable injury. (DE 19 at 12-14.) However, the district court also found that the appellants had failed to state a claim that the FWS had acted in a manner that was "arbitrary, capricious, an abuse of discretion, and contrary to law."  It reached this conclusion by agreeing with the FWS's argument that the plain language 16 U.S.C. § 4905(a)(2)(A), does not require a species to be listed as to "the countries of origin from which the species may be imported." (DE 19 at 14-20.) The district court also dismissed Count II of the complaint as a facial challenge which was time-barred. (DE 19 at 21-22.)  This appeal followed. (DE 20.)

## II.    Statement of the Facts.

### a. The Appellants.

The OPA is a national, non-profit 501(c)(6) organization incorporated in the State of Florida. It is focused on promoting the sustainable trade and conservation of avian species. The OPA represents professional aviculturists, that is, individuals whose life's work involves the caring, breeding, exhibiting, and conserving, of avian species. The OPA is a U.S.-based delegate to the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES").[2] (DE 19 at 1-2.)

The LPS is a nonprofit 501(c)(4) organization established in 2006, whose purpose is to represent the Lineolated Parakeet (*Bolborhyncus lineola*), the breeders of said species and to educate the public about keeping and breeding these birds in captivity. The LPS is incorporated

---

[2] *Convention on International Trade in Endangered Species of Wild Fauna and Flora* ("CITES"), Mar. 3, 1973, 27 U.S.T. 1087, T.I.A.S. No. 8249. The OPA was a participant at the most recent CITES meeting held in Geneva, Switzerland on June 19-23, 2023. *See List of Participants, Thirty-first meeting of the CITES Animals Committee,* https://cites.org/sites/default/files/eng/com/ac/32/AC32%20LoP.pdf., (last visited Aug. 17, 2023).

in Texas, with its principal place of business in Texas. The LPS runs the "It's Not Easy Being Green" project through which they promote the breeding of genetically pure green-type Lineolated Parakeets to promote the continued viability of the U.S. bloodlines of the species. The LPS, through its members, has provided green-type Lineolated Parakeets to the Smithsonian's National Zoo in Washington D.C. (DE 19 at 1-2.)

### b. The Birds.

The two species which are the subject of this litigation are the Cactus conure (*Eupsittula cactorum*) and the Lineolated parakeet (*Bolborhynchus lineola*).

The Cactus conure, also known as the Caatinga parakeet, is a medium-sized parrot with a wide range in its native range of eastern Brazil; it is classified as a species of least concern by the IUCN Redlist.[3] The species is absent from U.S. aviculture, but present in small, but established numbers in European aviculture. (DE 11-1.)

The Lineolated parakeet (*Bolborhynchus lineola*), also known as

---

[3] *Cactus Parakeet Eupsitula cactorum*, https://www.iucnredlist.org/ja/species/22685748/93085356 (last visited Aug. 18, 2023).

9

the Barred parakeet, is a small-sized parrot with a wide range in its native range of Bolivia, Peru, Colombia, Venezuela, Panama, Costa Rica, Nicaragua, Honduras, El Salvador, Guatemala, and Mexico; it is classified as a species of least concern by IUCN Redlist.[4] The species is common in worldwide aviculture, but the U.S. population is primarily made up of color mutations,[5] due to the fact that only color mutations are permitted to be imported to the United States. 50 C.F.R. § 15.33(a).

Both these species are listed in Appendix II of CITES, and as a result, the international trade in these species requires the issuance and presentation of an export permit, discussed further *infra*.

### c. The Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES)

The Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") is a multilateral treaty to which 183

---

[4] *Barred parakeet Bolborhynchus lineola*, https://www.iucnredlist.org/species/22685913/140714291 (last visited Aug. 18, 2023).

[5] A "mutation" is an avicultural term for a specimen of a species that is morphologically distinct from a wild-type specimen. For example, in the wild, Lineolated parakeets (*Bolborhynchus lineola*) have green feathers. However, over the many years that this species has been captive-bred worldwide, many color mutants have emerged, including, but not limited to, blue, yellow, white, and grey. These mutations are then bred and preserved by some aviculturists, much like the way dog breeds are established and preserved.

countries and the European Union are parties. The purpose of the Convention is to provide a framework by which countries can regulate the international trade is non-domesticated fauna and flora. The United States was one of the original signatories to the Convention in 1973. CITES, Mar. 3, 1973, 27 U.S.T. 1087, T.I.A.S. No. 8249.

The principal method through which the Convention seeks to regulate trade is through the creation and maintenance of appendices. The appendices are referred to as Appendix I, Appendix II, and Appendix III. Appendix I includes "all species threatened with extinction which are or may be affected by trade." Species listed in this appendix are subject to the strictest restrictions and trade in these species "must only be authorized in exceptional circumstances." CITES Art. II(1). Appendix II includes "all species which although not necessarily now threatened with extinction may become so unless trade in specimens of such species is subject to strict regulation in order to avoid utilization incompatible with their survival." CITES Art. II(2)(a). And Appendix III includes "all species which any Party identifies as being subject to regulation within its jurisdiction . . . and as needing the co-operation of other Parties in the control of trade." CITES Art. II(3). In summary, these Appendices,

contain the lists of all the species which the Convention, as a body, has identified as requiring the monitoring and regulating of trade.

A species listed on any of the three appendices is subject to the Convention's permitting system. For an Appendix I species, to be traded internationally the exporting country must issue an export permit and the importing country must issue an import permit. To issue an export permit, the exporting country must be convinced that the export is non-detrimental to the survival of species, that the specimen was lawfully acquired, will be humanely shipped, and that the importing country will issue an import permit. To issue an import permit, the importing country must find that the import is non-detrimental to the survival of species, the recipient is suitably equipped to care for the live specimen, and that the import is for a non-commercial purpose. CITES Art. III(2)-(3). However, specimens of the Appendix I species bred-in-captivity for commercial purposes at a registered breeding facility are treated as if they were listed in Appendix II. CITES Art. VII(4). The West Indian Manatees, African Grey Parrots, and some populations of Elephants are listed in Appendix I.

For an Appendix II species to be traded internationally the

exporting country must issue an export permit.  To issue an export permit, the exporting country must be convinced that the export is non-detrimental to the survival of species, that the specimen was lawfully acquired, and that it will be humanely shipped. The import of such a species requires the presentation of an export permit. CITES Art. IV. Giraffes, medicinal leeches, and all parrots except those listed in Appendix I and four domesticated species are listed in Appendix II.

For an Appendix III species to be traded internationally the exporting country must issue an export permit, The exporting country must be convinced that the specimen was lawfully acquired and that it will be humanely shipped. The import of such a species will require the presentation of a certificate of origin or an export permit. CITES Art. V. Appendix III listings are country-specific, so the import of a specimen from a country of origin that is not the country that has listed the species only needs to demonstrate its country of origin. Ocellated turkeys from Guatemala are listed in Appendix III.

The two species at issue here are both listed on Appendix II and are regularly bred and traded outside of their countries of endemic origin.

The form of a CITES permit is regulated by the Convention. CITES Art. VI. Such permits must include the "country of origin" of the specimens, among other information. CITES Art. VI(2). The model CITES permit, as provided by the Convention, is included at the end of this section for the Court's consideration, as is a redacted U.S.-issued CITES permit.

All parties to the Convention "shall take appropriate measures to enforce the provisions" of the Convention, and ensure that "specimens shall pass through any formalities required for trade with a minimum of delay. CITES Art. VII.

Additionally, under the Convention, parties are permitted to adopt "stricter domestic measures regarding the conditions of trade, taking, possession, or transport of specimens of species included in Appendices I, II, III, or the complete prohibition thereof." CITES Art. XIV.

In the United States, the FWS enforces the CITES. The US's obligations under the CITES are codified at 50 C.F.R. Part 23.

14

**Annex 2**                                                      **Standard CITES form**

| CONVENTION ON INTERNATIONAL TRADE IN ENDANGERED SPECIES OF WILD FAUNA AND FLORA | PERMIT/CERTIFICATE No. ☐ EXPORT ☐ RE-EXPORT ☐ IMPORT ☐ OTHER: | Original |
|---|---|---|
| | | 2. Valid until |

| 3. Importer (name and address) | 4. Exporter/re-exporter (name, address and country) |
|---|---|
| 3a. Country of import | |
| | Signature of the applicant |

| 5. Special conditions | 6. Name, address, national seal/stamp and country of Management Authority |
|---|---|
| If for live animals, this permit or certificate is valid only if the transport conditions comply with the IATA Live Animals Regulations; if for live plants, with the IATA Perishable Cargo Regulations; or, in the case of non-air transport, with the CITES Guidelines for the Non-Air Transport of Live Wild Animals and Plants | |

| 5a. Purpose of the transaction (see reverse) | 5b. Security stamp no. |
|---|---|

| | 7./8. Scientific name (genus and species) and common name of animal or plant | 9. Description of specimens, including identifying marks or numbers (age/sex if live) | 10. Appendix no. and source (see reverse) | 11. Quantity (including unit) | 11a. Total exported/Quota |
|---|---|---|---|---|---|
| **A** | 7./8. | 9. | 10. | 11. | 11a. |
| | 12. Country of origin * Permit no.    Date | | 12a. Country of last re-export    Certificate no.    Date | | 12b. No. of the operation ** or date of acquisition *** |
| **B** | 7./8. | 9. | 10. | 11. | 11a. |
| | 12. Country of origin * Permit no.    Date | | 12a. Country of last re-export    Certificate no.    Date | | 12b. No. of the operation ** or date of acquisition *** |
| **C** | 7./8. | 9. | 10. | 11. | 11a. |
| | 12. Country of origin * Permit no.    Date | | 12a. Country of last re-export    Certificate no.    Date | | 12b. No. of the operation ** or date of acquisition *** |
| **D** | 7./8. | 9. | 10. | 11. | 11a. |
| | 12. Country of origin * Permit no.    Date | | 12a. Country of last re-export    Certificate no.    Date | | 12b. No. of the operation ** or date of acquisition *** |

\*   Country in which the specimens were taken from the wild, bred in captivity or artificially propagated (only in case of re-export)
\*\*  Only for specimens of Appendix-I species bred in captivity or artificially propagated for commercial purposes
\*\*\* For pre-Convention specimens

13. This permit/certificate is issued by:

| Place | Date | Security stamp, signature and official seal |
|---|---|---|

| 14. Export endorsement: | 15. Bill of Lading/Air waybill number: |
|---|---|

| Block | Quantity | | | | |
|---|---|---|---|---|---|
| A | | | | | |
| B | | | | | |
| C | | Port of export | Date | Signature | Official stamp and title |
| D | | | | | |

**CITES PERMIT/CERTIFICATE No.**

*Resolution Conf. 12.3 (Rev. CoP16) – 16*

FORM 3-201A (1/97)

**CITES**

## CONVENTION ON INTERNATIONAL TRADE IN ENDANGERED SPECIES OF WILD FAUNA AND FLORA

| | | Page | 1 of 1 |
|---|---|---|---|
| [X] EXPORT PERMIT | | 1. Original Permit/Certificate No. | |
| [ ] RE-EXPORT CERTIFICATE | | | |
| [ ] OTHER CERTIFICATE (see block 9) | | 2. Valid until | |

3. Permittee (name and address, country)

4. Consignee (name and address, country)

5. Special Conditions
ALL APPLICABLE FOREIGN, LOCAL, STATE, OR OTHER FEDERAL LAWS, INCLUDING THOSE REQUIRING PERMITS, MUST BE OBSERVED.

5a. Purpose of Transaction

6. U.S. Management Authority

Department of the Interior
U.S. FISH AND WILDLIFE SERVICE
DIVISION OF MANAGEMENT AUTHORITY
BRANCH OF PERMITS, MS: IA
5275 LEESBURG PIKE
FALLS CHURCH VA 22041-3803

For live animals, only valid if the transport conditions comply with the CITES Guidelines for Transport of Live Animals or, in the case of air transport, with IATA Live Animals Regulations.

**U.S. CITES Management Authority**

Issuing Date     United States Management Authority

AUTHORITY: Endangered Species Act of 1973 (16 USC 1531 et. seq.)

| 7/8. Common Name and Scientific name (genus and species) of Animal or Plant | 9. Description of Part or Derivative, including identifying marks or numbers (age/sex if live) | | | 10. Appendix No. and Source |
|---|---|---|---|---|
| A.  Common Name | 9. EXPORT: | | | 10. |
| Scientific Name | | | | 11. Quantity (including units)      NO |
| | | | | 11a. Total Exported/Quota |
| 12. Country of Origin U.S.A. | Permit/Certificate No. | | Date of Issue | 12b. Breeding Operation No. |
| 12a. Country of Last Re-export | Re-export Certificate No. | | Date of Issue | 12c. Pre-Convention: Date of Acquisition |
| B.  Common Name | 9. | | | 10. |
| Scientific Name | | | | 11. Quantity (including units)      NO |
| | | | | 11a. Total Exported/Quota |
| 12. Country of Origin U.S.A. | Permit/Certificate No. | | Date of Issue | 12b. Breeding Operation No. |
| 12a. Country of Last Re-export | Re-export Certificate No. | | Date of Issue | 12c. Pre-Convention: Date of Acquisition |

13. Export / Re-export Endorsement:
The official who inspects shipment upon exportation / re-exportation must enter the total quantities of specimens being exported / re-exported in this block.

| See Block 7 | Quantity |
|---|---|
| A | |
| B | |

14. Bill of Lading/Air Way-Bill Number

Port of Exportation / Re-exportation

Total No. of Shipping Containers

15. This document valid only with inspecting official's ORIGINAL stamp, signature and date in this block.

Inspecting Official's Stamp, Signature and Date

1044233

### d. The Wild Exotic Bird Conservation Act ("WBCA"), codified at 16 U.S.C. § 4901-4916.

The Wild Exotic Bird Conservation Act ("WBCA"), codified at 16 U.S.C. § 4901-4916, was originally passed into law on October 23, 1992, and is, by its own terms, a "stricter domestic measure" under the CITES. 16 U.S.C. § 4901(12). Additionally, the WBCA states in its statement of purpose that it seeks to promote the conservation of exotic birds by "encouraging and supporting effective implementation of the Convention."[6] 16 U.S.C. § 4902(4).

The WBCA, when passed into law, created a temporary moratorium on the import of exotic avian species listed on any of the three CITES's Appendices. 16 U.S.C. § 4904(c). Congress found that this measure was necessary due to the large and unsustainable import of wild-caught exotic birds into the United States at the time. 16 U.S.C. § 4901(1)-(2). Congress also found that taking such an action would help the U.S. better comply with its obligations under CITES. 16 U.S.C. § 4901(11).

It was the intent of Congress that the moratorium was to be lifted

_____

[6] References in the WBCA to the Convention are referring to the CITES. 16 U.S.C § 4903(1).

17

species by species, as the FWS made the necessary findings in 16 U.S.C. § 4905. These determinations were supposed to be conducted "periodically" and a list of species "not subject to a prohibition or suspension of importation" was supposed to be created and published. 16 U.S.C. § 4905(a)(1). The FWS currently publishes that list at 50 C.F.R § 15.33 but has only ever conducted one review of the list of species not subject to a prohibition or suspension of importation under the WBCA. See 59 Fed. Reg. 62,254, 62,262 (Dec. 2, 1994). This first and only review was conducted on December 2, 1994, and added 48 species to the list, many of which are non-CITES listed, as well as several mutations of said species. 50 C.F.R § 15.33. Notable to this litigation, the list included three separate entries for the blue, yellow, and white form of the Lineolated Parakeet (*Bolborhynchus lineola*), but not the green form of the species.

The WBCA created a procedure by which "any person may at any time submit . . . a petition" to request a species be added to the list of species permitted for importation to the United States. 16 U.S.C. § 4909. Within 90 days of receiving such a petition, the FWS must publish in the Federal Register a preliminary ruling and provide an opportunity for public comment if that preliminary ruling is favorable and

must issue a final ruling within 90 days after the end of the public comment period." 16 U.S.C. § 4909(b).

The list of approved species for import to the United States is governed by 16 U.S.C. § 4905. The statute states that the FWS will list a species on the approved list by "the countries of origin from which the species may be imported" or "if appropriate, the qualifying facilities in those countries from which the species may be imported." 16 U.S.C. §§ 4905(a)(2)(A)-(B).

The species on the approved list may be either captive-bred or non-captive-bred. 16 U.S.C. §§ 4905(b)-(c). The 48 species currently listed at 50 C.F.R. § 15.33 only include captive-bred specimens. However, the U.S. still permits the importation of non-captive-bred avian species, so long as they are not listed on the CITES.

Notably, when the WBCA was passed into law in 1992, between 206,797 and 267,908,[7] non-captive-bred *Psittaciformes*[8] were in international trade, while in 2020, only between 6,479 to 17,291 non-captive-

---

[7] CITES trade data is self-reported by member countries and contains discrepancies, such as differences between the number of export permits reported to have been issued and the number of permits used, as a result, the data creates a range of possible trade volumes.

[8] The order *Psittaciformes* includes all parrots.

bred *Psittaciformes* were in international trade. Likewise, the trade data shows that in the year 1992, between 62,344 and 78,291 captive-bred *Psittaciformes* were in international trade, while in 2020, between 91,445 to 511,658 captive-bred *Psittaciformes* were in international trade. Taking the low end of both ranges shows that approximately 93%[9] of the international trade in Psittaciformes in 2020 was in captive-bred birds compared to only 23% in 1992.[10]

## III.  Scope and Standard of Review.

This Court "review[s] *de novo* questions of statutory interpretation." *Silva-Hernandez v. USCIS*, 701 F.3d 356, 361 (CA11 2012) (punctuation and citation omitted). " ' If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.' " *Id.* (*citing Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 842-43 (1984)).  "In order to determine whether the intent of Congress is clear, [courts] must

---

[9] If we were to use the higher end of the range, effectively 99% of the international trade in CITES-listed *Psittaciformes* would be in captive-bred specimens.

[10] The figures mentioned above are sourced from the CITES trade database. *CITES Trade Database*, https://trade.cites.org/ (last visited Aug. 17, 2023).

employ traditional tools of statutory construction." *Id.* (*citing Chevron*, 467 U.S., at 843 n. 9).

## SUMMARY OF ARGUMENT

Pursuant to 16 U.S.C. § 4909, the OPA and LPS filed petitions to add Cactus conure (*Eupsittula cactorum*) and the Lineolated parakeet (*Bolborhynchus lineola*), to the approved import listed created by 16 U.S.C. § 4905(a)(2); 50 C.F.R. § 15.33. The FWS deemed these petitions invalid and failed to adjudicate them. They made these findings because the petitions requested that the species in question be permitted for import from specific countries of origin. The position of the FWS was that neither the statute nor the regulations permitted a species to be listed on the approved import list by country of origin.

It is the position of the OPA and LPS that the plain, unambiguous language of the statute requires that the FWS accept and adjudicate country-specific petitions. The OPA's and LPS's position is supported by the implementation of the CITES regulatory framework, the regulatory definition of country of origin found at 50 C.F.R. § 23.5 and 50 C.F.R § 10.12, and by the canon against surplusages.

The reading proposed by the OPA and LPS is not radical, nor is

not counterintuitive. The country of origin from which a specimen of a species may be imported to the United States is a key piece of information under the statute, the regulations, and the CITES. The reading of the FWS ignores the importance of this key piece of information.

## ARGUMENTS AND CITATIONS OF AUTHORITY

**I.    The plain language of 16 U.S.C. § 4905(a)(2)(A) requires that FWS list avian species permitted for import by country of origin.**

The entirety of the dispute between the parties boils down to the plain language meaning of the statutory text found at 16 U.S.C. § 4905(a)(2). Thus, it is only natural, to begin with, the statutory text. "The starting point for interpreting a statute is the language of the statute itself." *Consol. Bank, N.A., Hialeah, Fla. v. U.S. Dep't of Treasury, Office of Comptroller of Currency*, 118 F.3d 1461, 1463 (11th Cir. 1997). "We begin our analysis, as always, with the statute's text." *Romero v. Sec'y, U.S. Dep't of Homeland Sec.,* 20 F.4th 1374, 1381 (11th Cir. 2021).

Under 16 U.S.C. § 4905(a)(1), the FWS is required to create, maintain, and update a list of species that is not subject to any of the import prohibitions of the WBCA. Said list is found at 50 C.F.R. 15.33; for

simplicity's sake this will be referred to as the "approved import list."

The manner in which species are to be listed is governed by 16 U.S.C. § 4905 (a)(2); the statute of contention. Since the plain language meaning of this paragraph will decide the outcome of this case it is now quoted in full:

> (2) Manner of listing
>
>> The Secretary **shall list a species** under paragraph (1) **with respect to**—
>>
>> (A)  **the countries of origin from which the species may be imported**; and
>>
>> (B)  if appropriate, the qualifying facilities in those countries from which the species may be imported.

16 U.S.C. § 4905(a)(2) (emphasis added.)

It is the position of the OPA and LPS that the statute means that it says, a listing of a species on the approved import list must be made with respect to the "countries of origin from which the species may be imported." Alternatively, the species may be listed on the approved import list from a qualifying facility within a particular country of origin. That is to say, the OPA and LPS read the statute as clearly requiring that if an entry is made on the approved import list, that entry must include the following information: 1) the species, 2) the countries of origin

where that species may be imported from, and 3) if appropriate, a particular facility within that country of origin. And thus, any petition to add a species to the approved import list can request that a species be permitted for import from specific "countries of origin"

Another way of looking at this is that the statute starts with the broadest term, the species, which includes all specimens which are considered to be within that species, then the subset of specimens of the species in approved countries where those specimens may originate from, and finally, any qualifying facility for that species in an approved country of origin from which the species can be imported from, the smallest subset.

Since "our starting point is the language of the statute itself." *Ardestani v. INS*, 502 U.S. 129, 135, (1991) (cleaned up). And, "words are to be given the meaning that proper grammar and usage would assign them." *Nielsen v. Preap*, 139 S. Ct. 954, 965, (2019). The OPA and LPS struggle to see how these words can mean something other than what they mean. A species must be listed on the approved list by "the countries of origin from which the species may be imported." Statutory

24

language is rarely so cut and dry, but there it is, Congress has told us what it wanted.

And the OPA and LPS undoubtedly complied with what the statute requires when they filed their petitions under 16 U.S.C. § 4909. The petitions requested that Cactus conures and Lineolated parakeets be included on the approved import list from specific countries of origin. (DE 11-1; 11-2.)

## II.    The implementation of the CITES and the regulatory definitions of country of origin supports the OPA and LPS's position.

However, assuming that is not enough, the OPA and LPS would direct this Court's attention to the Model CITES permit and the U.S. CITES permit provided above, both of which include a box for "country of origin."

As explained *supra,* the WBCA is a "stricter domestic measure" under the CITES and Congress explicitly understood itself as creating a CITES compliance mechanism when writing the WBCA. 16 U.S.C. §§ 4901(11)-(12). And any species added to the approved import list will enter the United States under a CITES export permit from a foreign country that will include a country of origin in the country-of-origin box

on the CITES permit. Therefore, it is helpful to look at what "countries of origin" means within the CITES context. "Context is a primary determinant of meaning," and "the entirety of the document thus provides the context for each of its parts." Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* ("Reading Law") 167 (2012)

Since any such import permit will be a CITES permit, we can look to 50 C.F.R. Part 23, which includes all the regulations that implement the United States' obligations under the CITES. "The regulations in this part implement the Convention on International Trade in Endangered Species of Wild Fauna and Flora, also known as CITES, the Convention, the Treaty, or the Washington Convention, TIAS (Treaties and Other International Acts Series) 8249." 50 C.F.R. § 23.1(a).

Since the text of the WBCA does not provide a definition of "countries of origin," then it only seems natural to look to the regulations that implement the CITES for a definition. That definition is found at 50 C.F.R. § 23.5. "Country of origin means the country where the wildlife . . . was taken from the wild or was born or propagated in a controlled environment." 50 C.F.R. § 23.5. This definition only further strengthens the OPA's and LPS's position. Country of origin does not mean the

26

country where all specimens of the species originally originated from, i.e. where they are native too, but the country, where in the case of captive-bred specimens, they were "born . . . in a controlled environment."

Therefore, 16 U.S.C. § 4905(a)(2) can only be read to mean that a listing on the approved import list must include a limitation on countries of origin where the species can be imported from. And that country of origin is the country where the specimens if captive-bred, were "born in a controlled environment." And that approved "country of origin" will be listed on the CITES export permit, which will be presented to FWS when the specimens arrive in the United States. The language of the statute is clear, unambiguous, and in favor of the OPA's and LPS's position.

There is one other place in the FWS's regulations where the term country of origin is defined. In 50 C.F.R § 10.12, "country of origin means the country where the animal was taken from the wild, or the country of natal origin of the animal." However, here as well the regulatory definition means where the specimen was born. While it is true, that "natal" can be defined as either native or place of birth, in this

context native does not make sense.[11] Notice that the language of the regulation is written in the singular, "the animal." This regulation is discussing a singular specimen. Further, it is focused on where that animal was "taken from the wild" or "natal origin." This language is focusing on the country where the specific specimen came into captivity, i.e. where it was captured or born.

And when we look throughout the regulations for other uses of the term "natal," we find that the regulations always use the word natal to refer to the place of birth of a specimen. For example, "desert tortoise" shall mean any member of the species *Gopherus agassizii*, . . . found outside of Arizona (south and east of the Colorado River) and Mexico, regardless of natal origin or place of removal from the wild." 50 C.F.R. § 17.42(e). A member, that is any individual specimen of *Gopherus agassizii*, is a desert tortoise, regardless of where it was born or taken from the wild. In the regulations, natal is always used to refer to the place of birth. *See also* 50 C.F.R. § 22.6 ("Local area population (LAP) means the bald or golden eagle population within the area of a human activity or

_____

[11] *Natal,* Merriam-Webster, https://www.merriam-webster.com/dictionary/natal (last visited Aug. 17, 2023).

project bounded by the natal dispersal distance for the respective species."); 50 C.F.R. § 17.95(i)(2)(iv) ("Stepping-stone habitat consisting of undeveloped open areas with the physical characteristics appropriate for supporting the short-stature prairie oak savanna plant community (well-drained soils), within ~1.2 miles (~2 km) of natal lupine patches").

Therefore, "countries of origin" can only be understood within 16 U.S.C. § 4905 to have one meaning, the place where the captive-bred specimens of a species on the approved import listed can have been born in a controlled environment.  Thus, the petitions filed by the OPA and LPS with the FWS requesting that species be added to the approved import list in relation to specific countries of origin must have been valid because they conform with the plain language of the statute and the regulatory text.

## III.  The statutory tools of construction further support the OPA and LPS.

If that is still not enough, we can look to the traditional tools of statutory construction. "To determine whether a statute has a plain meaning, we ask whether its meaning may be settled by the traditional tools of statutory construction. These tools encompass our regular

29

interpretive method, including the canons of construction." *Hylton v. U.S. Att'y Gen.*, 992 F.3d 1154, 1158 (11th Cir. 2021).

The reading of the statute proposed by FWS, that it does not "provide for species listing in a country-by-country manner," renders as surplusage the statutory text to that effect. (DE 1-3; 1-4). The text of the statute, 16 U.S.C. § 4905(a)(2)(A) states unequivocally that listings on the approved import list must be made " with respect to—the countries of origin from which the species may be imported." This language must mean something, otherwise, Congress would not have included it in the statute. Likewise, the language in the succeeding subparagraph, 16 U.S.C. § 4905(a)(2)(B), is rendered superfluous by FWS's reading. Again, the subparagraph states:

> The Secretary shall list a species under paragraph (1) with respect to—
>
> . . .
>
> **(B)** if appropriate, the qualifying facilities in **those countries from which the species may be imported.**

(Emphasis added.) The reading proposed by FWS eliminates the references to country of origin in the statute in both subparagraphs. FWS reads the statute like this:

30

(2) Manner of listing

> The Secretary **shall list a species** under paragraph (1) ~~with respect to~~—
>
> ~~(A)   the countries of origin from which the species may be imported; and~~
>
> (B)    [or] if appropriate, the qualifying ~~facilities in those countries~~ from which the species may be imported.

16 U.S.C. § 4905(a)(2) (as modified.) The "surplusage canon obliges us, whenever possible, to disfavor an interpretation when that interpretation would render a clause, sentence, or word superfluous, void, or insignificant." *In Re Shek*, 947 F.3d 770, 777 (11th Cir. 2020 (cleaned up.)

The reading proposed by the OPA and LPS is the only reading that does not render the references to country of origin as surplusage. And again, as discussed above, "country of origin" does have a definition. "Country of origin means the country where the wildlife . . . was taken from the wild or was born or propagated in a controlled environment." 50 C.F.R. § 23.5. And that is a key piece of information that is listed on a CITES permit. Therefore, it cannot be that Congress included these references to "country of origin" by accident. These references mean something very specific within the structure of the statute.

And we must look to 50 C.F.R. § 23.5, for that definition because, the WBCA is a "stricter domestic measure" under the CITES and Congress explicitly understood itself as creating a CITES compliance mechanism when writing the WBCA. 16 U.S.C. §§ 4901(11)-(12). "The plain meaning of a statutory provision derives not only from the 'particular statutory language at issue, but also the language and design of the statute as a whole." *In Re Shek*, 947 F.3d 770, 777 (11th Cir. 2020) (cleaned up.)

The reading here proposed by the OPA and LPS is not radical, it is not counterintuitive. The OPA and LPS want what the statute states, they want to be permitted to petition the FWS, under 16 U.S.C. § 4909, to add species to the approved import list from specific countries of origin. The OPA does not know if it would be appropriate to import Cactus conures from Kazakhstan, but the OPA has visited Cactus conure breeders in the Czech Republic doing excellent work. If the OPA wants to petition the FWS to add Cactus conures from the country of origin of the Czech Republic, it should be allowed to have that petition heard, because that is what the statutes want, and it is what the OPA wants.

The district court below thought that because the statute uses the word "species" it must have been referring to all specimens of the species worldwide. (DE 19 at 16-17.) And whiles a species does refer to all genetically related individuals worldwide, where the court below erred in not acknowledging, that while species is a subset of all life on earth, species themselves have subsets, such as those captured in the wild, those born in a controlled environment, those born in a particular country of origin, and/or in a qualifying facility. By reading "species" as an indivisible whole, without subsets, the district court rendered the "countries of origin" language as surplusage. This cannot be the correct reading.

## CONCLUSION

For the foregoing reasons, OPA and LPS respectfully request that the Court grant their appeal, and declare that under 16 U.S.C. § 4905(a)(2)(A) the FWS must list species by country of origin from which they can be imported and by extension that the FWS must consider petitions filed under 16 U.S.C. § 4909 that request species be added to the approved import list from specific countries of origin, and remand this case for further proceedings consistent with the Court's ruling.

33

Respectfully submitted,

/s/ David A. Garcia
David A. Garcia
David Anthony Garcia PA
739 Washington Ave, Ste. 909
Miami, FL 33030
Dir.: (305) 319-1309
david@davidgarcialaw.com

August 18, 2023                    *Counsels for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

A principal brief may not exceed 30 pages unless it complies with Fed. R. App. P 32(a)(7)(B) (type-volume limitation), as per Fed. R App. P. 32(a)(7)(A).

This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i), excluding parts exempted by Fed. R. App. P. 32(f), and 11th Cir. R. 32-4,[*] in that, it contains no more than 13,000 words, to wit: <u>6,172</u> words.

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5), (a)(6) in that it was prepared in a proportionally spaced typeface using Microsoft Word 2016 in CenturySchlbk CE font size 14.

<u>/s/ David A. Garcia</u>
David A. Garcia

August 21, 2023                    *Counsel for Appellants*

---

[*] In addition to those parts of the document excluded by Fed. R. App. P 32(f), 11th Cir. R. 32-4 exempts the material referred to in 11th Cir. R. 28-1(g) (jurisdictional statement) from "count[ing] towards page limitations or type-volume limitations."

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on August 21, 2023, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users and that service will therefore be accomplished through the appellate CM/ECF system.

/s/ David A. Garcia
David A. Garcia

August 21, 2023                    *Counsel for Appellants*